

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

DONALD E. RILEY,          )
         )
         Appellant,    )
         )    **WD85612**
v.          )
         )    **OPINION FILED:**
         )    **January 9, 2024**
STATE OF MISSOURI,    )
         )
         Respondent.    )

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable S. Margene Burnett, Judge**

**Before Division Two:** Janet Sutton, Presiding Judge, and
Alok Ahuja and Mark D. Pfeiffer, Judges

Mr. Donald Riley ("Riley") appeals the judgment of the Circuit Court of Jackson County, Missouri ("motion court"), denying, after an evidentiary hearing, his motion for post-conviction relief ("PCR") pursuant to Rule 29.15. We affirm.

## Facts and Procedural History[1]

On January 23, 2016, Riley was living with his sister ("Victim's mother"), and his

---

[1] "On appeal from the motion court's denial of a Rule 29.15 motion, we view the facts in the light most favorable to the underlying criminal conviction as those facts bear upon the motion court's judgment." *Morrison v. State*, 619 S.W.3d 605, 607 n.1 (Mo. App. W.D. 2021) (citing *McFadden v. State*, 553 S.W.3d 289, 296 n.2 (Mo. banc 2018)).

sister's twelve-year-old daughter, Victim.[2]  That night, an argument between Riley and

Victim's mother woke Victim.  Although her mother asked her to call police, Victim

went back to sleep.  She later woke up to Riley touching her waist and private parts while

she laid in bed.  Victim screamed and tried to run away, but Riley placed her in a

chokehold and, after she fell unconscious, raped her.  When Victim regained

consciousness, Riley warned her not to tell anyone what happened and left the house.

After he left, Victim immediately woke her mother, and her mother called police.

Police took Victim to a hospital, where a registered nurse performed a sexual

assault forensic examination.  The nurse collected vaginal swabs from Victim which

indicated the presence of Riley's sperm, consistent with Victim's account that Riley

penetrated her.

On June 24, 2016, the State charged Riley with one count of statutory rape in the

first degree and one count of domestic assault in the second degree.  At the time, Riley

was in the custody of the Federal Bureau of Prisons.  On July 25, 2016, the Federal

Bureau of Prisons sent the Jackson County Prosecutor a letter, which was received on

August 12, 2016.  That letter advised the prosecutor that Riley had requested disposition

of the charges pending against him in Jackson County pursuant to the Interstate

Agreement on Detainers ("IAD").  The letter contained Riley's signed request for final

disposition on the statutory rape and domestic assault charges, dated July 22, 2016, which

---

[2] Many of the underlying facts are taken directly from the memorandum supplementing the written order issued to Riley in his direct appeal, *State v. Riley*, 590 S.W.3d 450 (Mo. App. W.D. 2020), without further attribution.

was addressed to the Jackson County Prosecutor and the Clerk of Court of the Sixteenth Circuit Court. The State agrees the Jackson County Prosecutor's receipt of the letter on August 12 marked the beginning of the 180-day disposition period mandated by IAD, requiring the State to begin the trial of the two charges by February 8, 2017, unless the time was tolled or Riley waived his IAD rights.

On November 10, 2016, Jackson County authorities received Riley into their custody. On November 15, Riley made his initial appearance in circuit court without counsel. A public defender ("Public Defender 1") entered her appearance for Riley on November 29. Riley was arraigned on December 1, and a pre-trial conference was scheduled for December 15.

At the December 15 hearing, neither Public Defender 1 nor the State's attorney assigned to the case appeared; instead, the attorneys arranged for substitute attorneys from their respective offices to appear on their behalf. Riley did not appear at the hearing, and the hearing was not recorded or transcribed.[3] The trial court scheduled a jury trial for July 17, 2017—outside the 180-day IAD period—and emailed notice of the date to the assigned attorneys on the same day.

Public Defender 1 withdrew as Riley's attorney on May 11, 2017. Riley was assigned Public Defender 2 on the same day. At a hearing on May 25, Public Defender 2 indicated he would be ready to proceed with trial on July 17 and would not request any

---

[3] The motion court found that, in Jackson County, in-custody defendants normally do not attend these scheduling hearings and that these hearings are normally not recorded. Riley does not allege that he requested to attend the December 15 hearing even though it was scheduled at his in-person arraignment on December 1.

continuances. He subsequently filed a request for speedy trial on June 7, 2017. The State requested a continuance on June 22 because of scheduling conflicts with two witnesses. The trial court granted the continuance over Riley's objection and reset trial for September 5, 2017.

On July 14, 2017, the State filed a superseding indictment that added one count of rape in the first degree, based on the same January 23 event, and one count of tampering with a witness, based on two June 16 phone calls from Riley to Victim in which he begged her to stop cooperating with the prosecution.

On July 28, Riley filed a motion to dismiss, asserting that the State failed to bring him to trial within the 180-day IAD deadline. The trial court found Riley had waived his IAD rights by failing to object to the first trial date, which was already set outside the 180-day deadline. Following the denial, Riley filed a writ of prohibition with this Court, which was denied. Riley then sought a writ from the Missouri Supreme Court. This pending writ petition caused the trial court to continue the trial from September 5 to September 18. Ultimately, the Missouri Supreme Court denied the relief requested by Riley in his writ petition.

On September 14, Riley moved for the trial court to reconsider its denial of Riley's motion to dismiss under the IAD. Riley argued the record of the December 15 hearing did not show Public Defender 1 agreed to the trial date—because the hearing was not recorded at all—and, therefore, failed to show he had waived his rights. In its response, the State tendered the affidavit of the prosecutor who participated in the hearing. She attested that she deferred to defense counsel, who selected the date from the

4

options available without objection. The trial court again found Riley had waived his rights by acquiescing to the trial date and denied his reconsideration motion.

At the conclusion of the presentation of evidence at trial on September 20, the State dismissed the domestic assault charge but proceeded on the remaining three counts. A jury convicted Riley of statutory rape in the first degree, rape in the first degree, and tampering with a witness. The trial court found Riley to be a persistent offender and sentenced him to thirty years for statutory rape, thirty years for rape, and ten years for tampering with a witness. Each sentence was to run consecutively for a total of seventy years' imprisonment. In Riley's direct appeal, he challenged the trial court's consideration of the State's affidavit as it related to his IAD demand, and this Court affirmed the judgment. *State v. Riley*, 590 S.W.3d 450 (Mo. App. W.D. 2020).

Thereafter, Riley timely filed his *pro se* Rule 29.15 motion for post-conviction relief, and his appointed appellate counsel subsequently filed an amended motion. The motion court held an evidentiary hearing on November 9, 2021, and entered judgment denying Riley's PCR motion on July 1, 2022. This appeal followed.

## Standard of Review

"Appellate review of a motion court's dismissal of a post-conviction relief motion is limited to determining whether the findings and conclusions of law are clearly erroneous." *Propst v. State*, 535 S.W.3d 733, 735 (Mo. banc 2017) (citing *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014)); *see also* Rule 29.15(k).[4] "A motion court's

---

[4] All rule references are to I MISSOURI COURT RULES - STATE 2023.

findings and conclusions are clearly erroneous if this Court 'is left with the definite and firm impression that a mistake has been made' after a review of the entire record." *Id.* (quoting *Price*, 422 S.W.3d at 294). "The motion court's findings of fact and conclusions of law are presumed to be correct." *Beck v. State*, 637 S.W.3d 545, 551 (Mo. App. W.D. 2021) (quoting *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012)). The motion court's judgment "will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the [motion] court are wrong or not sufficient." *Driskill v. State*, 626 S.W.3d 212, 224 n.6 (Mo. banc 2021).

**Analysis**

Riley asserts two points on appeal which we address out of order for clarity.

**Point II**

In Point II, Riley asserts the trial court erred in determining that he waived his IAD rights when he did not object to his trial date setting outside the IAD deadline. Riley did not raise this issue on direct appeal.[5] Instead, in his direct appeal, Riley objected to the trial court's consideration of the State attorney's affidavit in deciding the issue of

---

[5] Riley did challenge the trial court's determination that he waived his IAD rights by filing pre-trial writs of prohibition to this Court and the Missouri Supreme Court. Both were summarily denied; however, these denials did not prevent Riley from raising the same issue on direct appeal. *See State ex rel. DKM Enters., LLC v. Lett*, 675 S.W.3d 687, 697 (Mo. App. W.D. 2023) (citing *State v. Kinder*, 89 S.W.3d 454, 458 n.3 (Mo. banc 2002)) ("Denial of a writ by the appellate court means nothing because a court may deny a writ for a number of reasons. Of particular importance here, such a denial does not necessarily mean that a petitioner cannot establish a right to relief in a later proceeding.").

whether the record demonstrated he acquiesced to the July 17 trial date. This Court rejected Riley's argument on direct appeal.

"Post-conviction relief under Rule 29.15 is not a substitute for direct appeal or to obtain a second chance at appellate review." *McLaughlin v. State*, 378 S.W.3d 328, 357 (Mo. banc 2012). Therefore, issues that could have been raised on direct appeal may not be raised in a PCR motion "except where fundamental fairness requires otherwise and only in rare and exceptional circumstances." *Shockley v. State*, 579 S.W.3d 881, 900 (Mo. banc 2019) (internal quotation mark omitted); *McLaughlin*, 378 S.W.3d at 345 (citing *State v. Ferguson*, 20 S.W.3d 485, 509 (Mo. banc 2000)) ("Mr. McLaughlin does not claim his trial counsel were ineffective . . . . Instead, Mr. McLaughlin seeks to challenge the trial court's evidentiary ruling as a matter of trial court err[or], which is not a cognizable claim in a Rule 29.15 proceeding."); *Tisius v. State*, 183 S.W.3d 207, 212 (Mo. banc 2006) ("Unlike a claim of withheld evidence, which would not be known to a movant during trial or direct appeal, a claim involving allegedly improper argument was apparent at trial and could have been raised on direct appeal.").

The trial court found that Riley waived his IAD rights. Riley could have raised that issue on direct appeal. His failure to do so prevents him from raising the issue now because he has not established the necessary rare and exceptional circumstances.[6]

---

[6] Riley contends his case should be considered rare and exceptional because the PCR evidentiary hearing revealed new evidence showing the affidavit submitted by the State for consideration on the waiver issue contained incorrect information—the affidavit claimed Public Defender 1 attended the December 15 hearing while she testified that she did not attend the hearing, the file entry for the hearing was not in her handwriting, and the initials on the file entry did not match Public Defender 1's initials. This file entry was

7

And even if Riley's point were properly before us, it has no merit. Riley contends the State failed to prove Riley affirmatively waived his IAD rights or implicitly waived by agreeing to a trial date set outside the waiver period. A defendant's IAD rights may be waived by the defendant's counsel. *New York v. Hill*, 528 U.S. 110, 114-15 (2000) (noting that "[s]cheduling matters are plainly among those for which agreement by counsel generally controls" and that "only counsel is in a position to assess whether the defense would even be prepared to proceed"). Waiver may be accomplished "by willingly accepting treatment inconsistent with the IAD's time limits." *Id.* at 118. Such inconsistent treatment includes acquiescing to a trial date initially set beyond the 180-day time limit. *State v. Overton*, 261 S.W.3d 654, 661 (Mo. App. S.D. 2008) (citing eight other jurisdictions reaching the same conclusion). Therefore, Riley's counsel validly waived Riley's IAD rights when she did not object to the trial court initially setting the

---

readily available to Riley and demonstrated the affidavit's error before his direct appeal. Issues that were known or reasonably could have been known before appeal do not fall within the rare and exceptional circumstances required to allow for the consideration of trial court error in a PCR motion. *See Strosnider v. State*, 514 S.W.3d 34, 40 (Mo. App. S.D. 2016) (denying a previously unraised claim of juror bias where defendant believed he personally knew the juror during trial but chose not to raise the issue until his PCR motion).

Even if we were to disregard the affidavit's statement that Public Defender 1 attended the December 15 hearing, the motion court did not clearly err in concluding that the misidentification of the specific defense counsel who attended the hearing did not impugn the affidavit's statement that *Riley's counsel* selected the July 17 trial date. Moreover, even without the affidavit, the evidence (including the post-conviction testimony of the Public Defender who *did* attend the hearing) plainly shows that Riley's counsel participated in the hearing at which the July 17 trial date was set, and did not object to that trial date at the hearing or for several months thereafter.

8

trial for July 17, 2017, where Riley's IAD deadline was February 8, 2017. Riley could not later recant this waiver. *Hill*, 528 U.S. at 118.[7]

Point II is denied.

**Point I**

In Point I, Riley asserts Public Defender 1's IAD waiver amounted to constitutionally ineffective assistance of counsel. To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984). *Shockley*, 579 S.W.3d at 892. Under *Strickland*, the movant must demonstrate: (1) "trial counsel failed to exercise the level of skill and diligence reasonably competent trial counsel would in a similar situation," and (2) "he was prejudiced by that failure." *Id.* (citing *Strickland*, 466 U.S. at 687).

To establish the performance prong, "a movant 'must overcome the strong presumption that counsel's conduct was reasonable and effective' and identify 'specific

---

[7] To the extent Riley implies that his counsel objected to the trial date chosen at the off-the-record hearing and, thus, did not actually waive his IAD rights, his argument is not supported by the record. Although the December 15 hearing was off the record, the motion court credited the testimony of substitute State's attorney that she allowed defense counsel to select the trial date. Additionally, Public Defender 1 received notice of the trial date on the same day, giving her nearly two months to raise an objection before February 8; she did not. Furthermore, Riley met with Public Defender 1 twice between December 15 and February 8 and testified he had access to a phone to call her; nonetheless, the motion court found no evidence suggesting Riley ever asked Public Defender 1 to object to the trial date or attempt to move it. Public Defender 1 also testified that if Riley had asked her to object to the trial date, she would have counseled Riley that the defense would not have been ready by February 8 and that the trial date should not be moved. This evidence leaves no question Riley's counsel willingly submitted to the trial date.

acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.'" *McKee v. State*, 540 S.W.3d 451, 456 (Mo. App. W.D. 2018) (quoting *Hoeber v. State*, 488 S.W.3d 648, 655 (Mo. banc 2016)). "The question in an ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." *Shockley*, 579 S.W.3d at 898 (quoting *Johnson v. State*, 406 S.W.3d 892, 901 (Mo. banc 2013)). "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Id.* (internal quotation marks omitted) (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)).

To establish the prejudice prong, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

If the movant fails to satisfy either prong, we need not address the other. *Staten v. State*, 624 S.W.3d 748, 750 (Mo. banc 2021); *Shores v. State*, 674 S.W.3d 127, 133 (Mo. App. W.D. 2023).

Riley claims Public Defender 1's waiver amounted to constitutionally ineffective assistance of counsel because she failed to inform the substitute defense attorney at the December 15 hearing of Riley's IAD defense, had no specific strategic reason for scheduling trial outside the IAD deadline, failed to consult with Riley before waiving, and failed to "follow up" on the issue after Riley mentioned it in a meeting with her.

10

Public Defender 1 was not required to consult Riley before waiving his IAD rights. *Hill*, 528 U.S. at 115 ("Likewise, only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier. Requiring express assent from the defendant himself for such routine and often repetitive scheduling determinations would consume time to no apparent purpose."). And Riley's assertion Public Defender 1 did not inform the December 15 substitute defense counsel of Riley's IAD rights before the hearing was expressly rejected by the motion court. The motion court's finding is supported by the following evidence: a note in Riley's case file indicating Riley was in Jackson County on a writ, which was entered before the December 15 hearing; substitute defense counsel's credible testimony that public defenders would routinely exchange IAD information when covering for scheduling conferences; and Public Defender 1's testimony that she would have included a discussion of the detainer when explaining the case to substitute defense counsel.

At the PCR evidentiary hearing, Public Defender 1 testified that she would not have been ready for trial on February 8, 2017, a little over two months after her assignment to the case, given the serious nature of the charges. This assessment was a sound justification for scheduling trial outside the IAD deadline on its own, even if Public Defender 1 did not specifically consider how selecting that date would affect Riley's IAD rights. *See Sams v. State*, 980 S.W.2d 294, 296-97 (Mo. banc 1998) ("Sams' trial counsel may not have analyzed the continuance on the basis of Sams' motion for a speedy trial. However, because the defense was not prepared for trial, the decision to stipulate to a continuance was not unreasonable regardless of defense counsel's

11

awareness of the motion for a speedy trial."); *McDonald v. State*, 77 S.W.3d 722, 726 (Mo. App. S.D. 2002) (applying *Sams* to a public defender's decision to agree to a continuance and not demand trial within the 180-day IAD deadline).

To demonstrate that Public Defender 1's assessment was unreasonable, Riley points out that Public Defender 2 was willing to take the case to trial within two months. This argument is not persuasive. First, Public Defender 2 did *not* actually proceed to trial within two months because of State's granted request for a continuance. Second, Public Defender 2 had the benefit of Public Defender 1's previous work on the case. Finally, and most importantly, the mere fact that a different attorney could have possibly been ready for trial within two months of receiving the case does not render another attorney's need for additional preparation unreasonable. *See Shockley*, 579 S.W.3d at 892. The motion court's conclusion that Public Defender 1's lack of objection to the trial date was not constitutionally ineffective assistance of counsel pursuant to the *Strickland* standard is supported by the record. Because Riley has failed to meet his burden of proving the *Strickland* performance prong, we need not and do not address the *Strickland* prejudice prong.

Point I is denied.

## Conclusion

The motion court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Janet Sutton, Presiding Judge, and Alok Ahuja, Judge, concur.